UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
                                                       :
MADHU DAVA,                                            :
                                                       :
                            Plaintiff,                 :
                                                       :
              -against-                                :
                                                       :
CITY OF NEW YORK, NYPD, NYPD                           :
DETECTIVE SALVATORE GIARDINA,                          :
JOSEPH BIDEN, BILL CLINTON, and                        :
CINDY PEÑA,                                            :
                                                       :
                            Defendants.                :
                                                       :
------------------------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _8/29/16_

1:15-cv-08575 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Madhu Dava brings suit against the City of New York ("the City"), his former

girlfriend Cindy Peña, the New York City Police Department ("NYPD"), NYPD Detective

Salvator Giardina, Vice President Joseph Biden, and former President Bill Clinton. He alleges

that Defendants violated his constitutional rights when he was arrested based on accusations

lodged by Peña. In addition, Plaintiff attacks the constitutionality of the Violence Against

Women Act of 1994 ("VAWA"), Pub L. No. 103-322, and the Violent Crime Control and Law

Enforcement Act of 1994 ("VCCLEA"), Pub. L. 103-322. Finally, Plaintiff brings related state

law claims. The City and Detective Giardina (collectively, the "New York City Defendants")

move to dismiss all claims against them. The Court grants that motion in full. In addition, the

Court *sua sponte* dismisses the claims against all other Defendants.

## BACKGROUND

### I.     Factual Background

For the purposes of this motion, the Court takes Plaintiff's allegations as true and draws

all reasonable inferences in his favor.

### a. Plaintiff's Arrest by the New York City Defendants

Plaintiff is an Indian national currently studying and working in the United States. (Compl. ¶ 11, ECF No. 1.) Plaintiff alleges that he was falsely arrested by Detective Giardina and other members of the 49th Precinct of the NYPD, even though he was "completely and totally innocent, and the evidence before his arrest supported his innocence." (Compl. ¶ 10.) He alleges that his arrest stemmed from false accusations made by his girlfriend, Defendant Peña. (Compl. ¶ 10.) However, according to Plaintiff, he was arrested despite the fact that prior to his detention and arrest, Peña "announced" that Plaintiff was innocent and that she was in fact to blame for any incident between them. (Compl. ¶ 11.)

Per Plaintiff, the criminal case against him was dismissed on October 22, 2015, by the Bronx District Attorney's Office, "due to the overwhelming evidence that not only was Plaintiff innocent of all charges, but that he was in fact the victim of domestic abuse, assault, battery, threats, and false complaints" lodged by Peña. (Compl. ¶¶ 12-13.) In addition, Plaintiff alleges that the NYPD refused to arrest—and the Bronx District Attorney refused to prosecute—Peña, despite evidence that she had filed a false complaint. (Compl. ¶ 14.)

### b. Plaintiff's Systemic Allegations

Plaintiff makes a number of allegations related to what he perceives as systemic problems stemming from VAWA and the VCCLEA. He alleges that these laws were drafted by then-Senator Biden and signed into law by then-President Clinton. (Compl. ¶ 1.)

Plaintiff alleges that these laws, "coupled with purposefully recruited police officers across America who are inherently racist, selectively enforce badly written laws, and politically target certain individuals" have resulted in the rise of mass incarceration and the "unfair and illegal arrest, prosecutions and convictions of tens of millions" of mostly minority, mostly male

individuals. (Compl. ¶ 1.) He also alleges that police officers have reported that these laws have deprived them of their discretion in making arrests, and thus even when a complaining party recants or fabricates allegations, "the state often and routinely picks up the case and aggressively prosecutes" it. (Compl. ¶ 4.) Plaintiff alleges that "[s]tudies have shown that the vast majority of those men unfairly prosecuted under the VCCLEA and VAWA statutes are those men that stayed too long in a bad relationship where they were the ones abused" and "where the female in the relationship used the unconstitutional protections afforded to her under VAWA to further abuse, hurt, and forever destroy the male in the relationship." (Compl. ¶ 9.)

Finally, Plaintiff alleges that his arrest was part of a pattern in which Indian Americans are maliciously persecuted as "hostages" by the United States government, and in particular by New York City, as a way of pressuring India to have a more United States-friendly foreign policy. (Compl. ¶ 15.)

### c. **Plaintiff's claims**

Plaintiff alleges a total of nineteen claims against the Defendants, under 28 U.S.C. § 1983 and the New York State Constitution, and at common law.[1] He does not specify which claims are brought against which defendants or identify the facts underlying the individual claims.

First, under 28 U.S.C. § 1983, he brings claims of: (1) unlawful surveillance in violation of the Fourth Amendment; (2) unlawful eavesdropping in violation of the Fourth Amendment; (3) unlawful wiretapping and videotaping in violation of the Fourth Amendment; (4) unlawful deprivation of the freedom of speech in violation of the First and Fourteenth Amendments; (5)

---

[1] Plaintiff at one point alleges, "This case involves a Civil Rights action under 42 U.S.C. § 1983 and 1988 wherein the above named Defendants have acted have acted in concert and conspiracy to deprive Plaintiff and others similarly situated in this potential class action . . ." (Compl. ¶ 16.) Nowhere else in the complaint does he allege claims under 42 U.S.C. § 1988 or allege claims on behalf of a purported class, nor does he follow any of the procedures for bringing his suit as a class action. *See generally* Fed. R. Civ. P. 23. Thus, the Court does not analyze any claims under 42 U.S.C. § 1988, and the Court considers Plaintiff's claims to be raised only on his own behalf.

violation of the Equal Protection Clause; (6) unlawful search and seizure in violation of the Fourth and Fourteenth Amendments;  (7) excessive use of force in violation of the Fifth and Fourteenth Amendments; (8) malicious prosecution in violation of the Fourth and Fourteenth Amendments; (9) violation of the Due Process Clause of the Fifth and Fourteenth Amendments; (10) prosecutorial misconduct, in violation of the First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendments; and (11) judicial misconduct, in violation of the First, Fourth, Fifth, Sixth, Thirteenth, and Fourteenth Amendments. (Compl. ¶¶ 19A-19I; 19R-19S.) Plaintiff also brings a claim of municipal liability pursuant to *Monell v. Dep't of Soc. Servs. ("Monell")*, 436 U.S. 658 (1978), premised on Defendants' failure to adequately supervise and train staff and agents; failure to properly and adequately monitor and discipline staff; and failure to adequately and properly investigate citizen complaints of misconduct. (Compl. ¶ 19J.)

Next, Plaintiff brings two claims under the New York State Constitution: (1) racially motivated attacks on Plaintiff in violation of the equal protection guaranteed by Art. I, § 11 of the New York State Constitution; and (2) unlawful search and seizure in violation of Art. I, § 12 of the New York State Constitution. (Compl. ¶¶ 19K-19L)

Finally, Plaintiff brings four common-law claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; and (4) negligent supervision, retention, and training. (Compl. ¶¶ 19M-19Q.)

## II.    Procedural Background

Plaintiff initiated this action against all Defendants on November 1, 2015. (Compl.) Over Plaintiff's objection, the matter was referred to the Court-annexed mediation program, pursuant to the Southern District's Plan For Certain § 1983 Cases Against The City Of New York. (ECF

4

Nos. 8-15.) On February 5, 2016, the New York City Defendants filed their answer. (ECF No. 18.) No other Defendant has answered or otherwise appeared.

After the parties failed to reach a settlement in mediation, this Court held an initial pretrial conference on May 13, 2016. (*See* Tr. Initial Pretrial Conf. ("Tr."), ECF No. 26.) At that conference, the Court expressed concern over the adequacy of Plaintiff's factual allegations, and granted Plaintiff leave to amend his complaint. (Tr. 9-10.) However, Plaintiff indicated that in lieu of filing an amended complaint, he might prefer to file what he styled as "a brief in support" of his complaint. (Tr. 9-10.) Over the New York City Defendants' objection, the Court permitted Plaintiff to file either an amended complaint or his proposed "brief in support." (Tr. 10-11.) However, the Court warned Plaintiff that filing a brief arguing that a claim should survive without alleging additional facts in the complaint would not cure any defects of the complaint. (Tr. 10-11.)

On May 25, 2016, Plaintiff filed the contemplated brief in support of the original complaint. (ECF No. 22.) The New York City Defendants requested that the brief be treated as a nullity, as a brief in support of a complaint is not contemplated by the Federal Rules of Civil Procedure. (ECF No. 23.) In the alternative, the New York City Defendants requested 30 days in which to respond. (ECF No. 23.) The Court granted the latter request, affording the New York City Defendants 30 days in which to respond to Plaintiff's brief. (ECF No. 25.)

On June 29, 2016, as its response, the New York City Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). (N.Y. Def.'s Mem., ECF No. 31.) That very day, Plaintiff filed his opposition to their motion. (Pl.'s Opp., ECF No. 32.) The New York City Defendants filed a reply brief the following day, June 30, 2016. (N.Y. Def.'s Reply, ECF No. 33.) Over the next several days, the parties exchanged a flurry of letters. (ECF Nos. 34-38.)

Finally, on July 7, 2016, this Court informed the parties that it would consider the motion to

dismiss to be fully briefed, that it would consider the motion based on the New York City

Defendants' motion to dismiss, Plaintiff's opposition, and the New York City Defendants' reply,

and that it would not consider any legal arguments contained in the letters. (ECF No. 39.) The

Court now turns to the motion to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

the Court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show

"more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a motion to dismiss, the Court accepts as true all factual allegations in

the complaint and draws all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc.*

*v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the Court need not credit

"mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*,

556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide

factual allegations sufficient "to give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Port Dock & iStone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d

117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The Court "may consider facts as

asserted within the four comers of the complaint together with the documents attached to the

complaint as exhibits, and any documents incorporated in the complaint by reference."[2] *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

Whereas motions to dismiss pursuant to Rule 12(b)(6) are to be filed prior to the filing of an answer, motions for judgment on the pleadings pursuant to Rule 12(c) may be filed after the filing of an answer. *See* Fed. R. Civ. P. 12. In deciding a motion filed under Rule 12(c), the Court "appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Mantena v. Johnson*, 809 F.3d 721, 728-29 (2d Cir. 2015) (quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).

## DISCUSSION

Plaintiff brings nineteen claims against six defendants. The Court begins by explaining the scope of the present decision, in terms of the Defendants involved, then turns to Plaintiff's claims.

## I.   Defendants

### A.   Claims Against the NYPD

The New York Defendants have moved to dismiss the complaint in its entirety. As an initial matter, all claims against the New York City Police Department are dismissed pursuant to 28 U.S.C. § 1915A(b), because the NYPD is not a suable entity. *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (citing N.Y.C. Charter Ch. 17 § 396) (affirming the district

---

[2] The New York City Defendants submitted with their motion outside materials, including the declaration of Defendant Giardina and a statement to the police signed by Defendant Peña. (*See* ECF Nos. 29-1; 30.) Plaintiff objects to the introduction of these materials at this stage. (Pl.'s Opp. ¶ 4.) The Court did not rely on the materials in coming to its decision and thus need not resolve this dispute.

court's dismissal of claims against the NYPD as a non-suable entity). The viability of the claims against the remaining New York City Defendants is addressed below.

**B.     Claims Against Non-New York City Defendants**

In addition, while the other defendants—President Clinton, Vice President Biden, and Cindy Peña—have not answered or otherwise appeared in this matter, "it is well settled that a 'district court has the power to dismiss a complaint *sua sponte* for failure to state a claim' so long as the plaintiff is given an opportunity to be heard." *Mentuhotep v. New York City Police Dep't*, No. 16 Civ. 2871 (GBD), 2016 WL 3522279, at *1 n. 1 (S.D.N.Y. June 22, 2016) (quoting *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)). Plaintiff here received notice at the May 13, 2016, status conference, during which the Court described the deficiencies it saw in various claims, explained that "whatever factual allegations are underpinning those claims need to be put in the complaint so that the defendants have notice of what the causes of action are and the basis for the causes of action," and gave Plaintiff leave to file an amended complaint. (Tr. 2-4, 8, 10-11.) Plaintiff was also given the opportunity to brief its opposition to the motion to dismiss. Thus, the Court will consider *sua sponte* whether dismissal is warranted for the claims against the non-New York City Defendants.

**C.     Issues with Immunity**

Finally, Plaintiff's claims against Detective Giardino, President Clinton, and Vice President Biden must overcome those defendants' immunity if they are to survive. The Court harbors serious doubts that Plaintiff may sustain any claims against President Clinton, as "a former President of the United States[] is entitled to absolute immunity from damages liability predicated on his official acts." *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). The same is true for claims against Vice President Biden stemming from actions he took as a senator, as "[i]t is well established that federal, state, and regional legislators are entitled to absolute immunity

8

from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). However, as Plaintiff does not plausibly state any claims against any Defendant, the Court need not address with granularity to which claims each Defendant is immune.

## II.     Plaintiff's Claims

Plaintiff alleges nineteen claims, under 28 U.S.C. § 1983 and the New York State Constitution, and at common law.

### A.      Section 1983

The Court construes Plaintiff's complaint to bring the following claims under 42 U.S.C. § 1983: (1) false arrest; (2) malicious prosecution; (3) prosecutorial misconduct; (4) a Due Process claim; (5) an Equal Protection claim; (6) a claim of municipal liability pursuant to *Monell*; (7) illegal search in violation of the Fourth Amendment, encompassing the separately listed claims of illegal surveillance, eavesdropping, and wiretapping and videotaping; (8) excessive force; (9) judicial misconduct; and (10) a First Amendment claim.

#### 1.      False Arrest and Malicious Prosecution

To state a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted). "The existence of probable cause for an arrest—*i.e.,* that the arrest was privileged—is a defense to a claim for false arrest or malicious prosecution." *Corsini v. Brodsky*, No. 13 Civ. 2587 (LTS), 2015 WL 3456781, at *3 (S.D.N.Y. May 27, 2015) (citing *Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001)).

Plaintiff's false arrest claim rests on his contentions that he was arrested "even though he was completely and totally innocent, and the evidence before his arrest supported his innocence," that he was "falsely accused by Peña," and that Peña "announced before his detention and arrest that Plaintiff was innocent." (Compl. ¶¶ 10-11.) These allegations are insufficient to establish that his confinement was "not otherwise privileged," *i.e.* that the New York City Defendants lacked probable cause. Plaintiff's own allegations establish that Peña lodged an accusation against him (*see* Compl. ¶ 10), and "[i]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal citations and quotation marks omitted). While Plaintiff asserts that Peña later "announced" that Plaintiff was innocent, he provides no context at all for this announcement—for example, to whom it was made, whether the arresting officers were aware of the announcement, or whether it was made in circumstances that might lead police to conclude it was not voluntary. As a result, "[t]he . . . [c]omplaint proffers no specific facts to support Plaintiff's contention that the arresting officers should have known at the time of the arrest[] that [Peña's] complaints were false and should for that reason have refused to act upon them," *Corsini*, 2015 WL 3456781, at *4. Plaintiff's conclusory assertions that he was "falsely arrested," "falsely accused," and innocent of the charges against him are insufficient to plausibly plead the required element that "the confinement was not otherwise privileged." Thus, Plaintiff's false arrest claim is dismissed.

Plaintiff's malicious prosecution claim must be dismissed for the same reason. To state a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual

malice as a motivation for defendant's actions," *Manganiello v. City of New York*, 612 F.3d 149,

161 (2d Cir. 2010) (citation and internal quotation marks omitted), and that his Fourth

Amendment rights were violated after legal proceedings were initiated. *Id*. (citations omitted).

Plaintiff's failure to plead facts—rather than conclusory allegations—sufficient to establish a

lack of probable cause dooms his malicious prosecution claim, as well. *See Corsini*, 2015 WL

3456781, at *4 ("Mere conclusory allegations that [the] complaints were false are insufficient to

establish lack of probable cause. Accordingly, Plaintiff's claims of malicious prosecution must

be dismissed."). Plaintiff's malicious prosecution claim, like his false arrest claim, is dismissed.

### 2.     Prosecutorial Misconduct

Plaintiff brings a claim of prosecutorial misconduct, apparently based on the Bronx

District Attorney's refusal to prosecute Defendant Peña when presented with evidence that Peña

committed a crime. (Compl. ¶ 14.) Plaintiff does not name any prosecutors as defendants—nor

could he have, as "[p]rosecutors are generally immune from liability under 42 U.S.C. § 1983 for

conduct in furtherance of prosecutorial functions that are intimately associated with initiating or

presenting the State's case." *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011). The decision

of whether or not to bring charges falls squarely within the scope of absolute prosecutorial

immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("[T]he initiation

and pursuit of a criminal prosecution are quintessential prosecutorial functions . . ."); *Bernard v.

Cty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("Where . . . a prosecutor's charging decisions

are not accompanied by any such unauthorized demand [for, for example, a bribe, sexual favors,

or the defendant's performance of a religious act] the fact that improper motives may influence

his authorized discretion cannot deprive him of absolute immunity."); *see also Town of Newton*

*v. Rumery*, 480 U.S. 386, 396 (1987) ("Our decisions in those cases uniformly have recognized that courts normally must defer to prosecutorial decisions as to whom to prosecute.").

Because no prosecutors are named as defendants in this action, it is unclear against whom Plaintiff intends to assert this claim. To the extent that it is brought against any individual, it is dismissed. To the extent that it is brought against the City, the Court addresses it below in the context of Plaintiff's *Monell* claims.

### 3.     Due Process

Plaintiff alleges that Defendants violated his right to be free from deprivation of liberty without due process of law. (Compl. ¶ 19I.) It is unclear whether he claims the violation of his procedural or substantive due process rights, or both, so the Court addresses both.

As for substantive due process, "[w]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Holland v. City of New York*, No. 14 Civ. 5517 (AT), 2016 WL 3636249, at *11 (S.D.N.Y. June 24, 2016) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000)); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."). Because Plaintiff's constitutional claims are covered by the First, Fourth, Sixth, Thirteenth, and Fourteenth Amendments, he cannot bring an additional claim for violation of his right to substantive due process under the Fourteenth Amendment. *See Holland*, 2016 WL 3636249, at *11 ("[P]laintiff's substantive due process claim is either subsumed in her more particularized allegations raising First Amendment and Equal Protection Clause claims, or must fail" (quoting *Velez*, 401 F.3d at

12

94) (internal quotation marks omitted)). To the extent that Plaintiff brings a substantive due process claim, it is dismissed.

As for procedural due process, to state a claim, a plaintiff must show: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). Plaintiff does not identify the liberty interest at issue, nor does he identify the process which he finds to be insufficient. Because he alleges no facts that would serve "to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Port Dock*, 507 F.3d at 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555), to the extent that Plaintiff brings a procedural due process claim, it is also dismissed.

### 4.  Equal Protection

Plaintiff brings a claim that he was discriminated against on the basis of race, religion, and ethnicity, which the Court takes to be a claim of denial of equal protection of the laws. "There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). A plaintiff could: (1) "point to a law or policy that expressly classifies persons on [an improper basis];" (2) "identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner;" or, (3) "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Id*. Plaintiff appears to proceed under the second or third theory.

As to the second theory—that the facially neutral VCCLEA and VAWA were applied in an intentionally discriminatory manner, constituting selective enforcement—he alleges that his arrest "was a racist and discriminatory action as Plaintiff is an Indian national currently

studying/working in the United States, and is otherwise a model and well-behaved intelligent individual." (Compl. ¶ 11.) He further alleges that defendant Peña "took advantage of the institutionally racist New York City criminal justice system, the racist atmosphere of today's policing, and the ease with which any woman can destroy an innocent man's life with false complaints and false allegations." (Compl. ¶ 12.)

To prevail on this selective enforcement theory, the "plaintiff must show that: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Wright v. NYPD Officer Michael Manetta*, No. 14 Civ. 8976 (KBF), 2016 WL 482973, at *3 (S.D.N.Y. Feb. 5, 2016) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). "A showing that the plaintiff was treated differently compared to others similarly situated' is a 'prerequisite' and a 'threshold' matter to a selective treatment claim." *Id.* (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 692 (S.D.N.Y. 2011)). "A plaintiff's naked assertions of discrimination are insufficient to survive the pleading stage." *Id.* (quoting *Liang v. City of New York*, No. 10 Civ. 3089, 2013 WL 5366394, at *11 (E.D.N.Y. Sept. 24, 2013)).

It is far from clear that the challenged laws, VAWA and the VCCLEA, had anything to do with Plaintiff's arrest. But even if the Court assumes these laws provided the basis for the arrest, Plaintiff's claim must be dismissed. This is because Plaintiff does not establish the threshold requirement of the claim: that he was subjected to selective treatment when compared with others similarly situated to him. Plaintiff identifies no other individual at all to whom he may be compared. His naked assertions of discrimination, absent any factual allegations

regarding his own treatment in comparison to the treatment of other similarly situated individuals, are insufficient to support the claim. His equal protection claim cannot be sustained under a theory of selective enforcement.

Nor can it be sustained under the third theory—that the facially neutral VCCLEA and VAWA have adverse effects, and that their passage was motivated by discriminatory animus. In support of that theory, Plaintiff alleges that the laws are "inherently racist" and that the laws have resulted in "the horrifying statistics that 1/3 of all black children being born today will end up in jail due to these two statutes, 1/6 of all Latinos, while only 1/17 of white children will end up falling into this quagmire." (Compl. ¶¶ 1, 5.) Plaintiff also alleges, "In 2015, former President Bill Clinton announced in several major newspapers that enacting the VCCLEA and VAWA laws were the 'worst mistakes of his entire career.'" (Compl. ¶ 5.)

But "proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Hayden v. Paterson*, 594 F.3d 150, 162-63 (2d Cir. 2010) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977)) (alteration omitted). "Although disproportionate impact is not irrelevant, to violate the Fourteenth Amendment the disproportionate impact must be traced to a *purpose* to discriminate on the basis of race." *Id.* (emphasis in original) (alteration, citations, and internal quotation marks omitted). Further, to plausibly plead the required discriminatory purpose element, "[t]he [c]omplaint must plead sufficient factual matters to show that the Defendants adopted and implemented the challenged policy 'at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Baez v. New York City Dep't of Transp.*, No. 14 Civ. 02520 (LGS), 2015 WL 3763878, at *4 (S.D.N.Y. June 15, 2015) (quoting *Hayden v,* 594 F.3d at 161-62).

Plaintiff does not adequately plead an Equal Protection claim under this theory because while he pleads the existence of a disparate impact, he does not plead the existence of a discriminatory purpose. Indeed, he does not even allege that at the time VAWA and the VCCLEA were passed, those who passed it were aware of its adverse effects on identifiable groups. While Plaintiff repeatedly alleges that the laws have had a disparate impact on various groups—black and Latino men, men generally, and Indian nationals—this alone cannot sustain his Equal Protection claim, and it must be dismissed.

### 5.    *Monell* Liability[3]

Plaintiff alleges that the City is liable for various constitutional violations, under *Monell.* Pursuant to *Monell,* a 42 U.S.C. § 1983 claim may only be brought against a municipality if the action that is alleged to be unconstitutional is caused by an official policy or custom. *Id.* at 690, 691. The plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). The policy or custom may come in one of four forms:

> (1) a formal policy officially endorsed by a municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

---

[3] Plaintiff's municipal liability claims must fail for each claim for which Plaintiff fails to show that the individual defendants committed underlying constitutional violations. But out of an abundance of caution, the Court separately analyzes Plaintiff's *Monell* claim against the City. *See Askins v. Doe No. 1*, 727 F.3d 248, 253-54 (2d Cir. 2013) ("Where the plaintiff does proceed against both the municipal actors alleged to have inflicted the tort and the municipality that promulgated the offensive policy, the plaintiff's failure to secure a judgment against the individual actors would, indeed, preclude a judgment against the municipality *if* the ruling in favor of the individual defendants resulted from the plaintiff's failure to show that they committed the alleged tort.")

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted).

At the pleading stage, the plaintiff need not *prove* the existence of the policy or custom, but he must do more than "merely allege the existence of a municipal policy or custom . . ." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015). Instead, he "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Id.* (citation and internal quotation marks omitted). Conclusory or boilerplate allegations of a municipal custom or practice, without factual details, cannot establish the existence of such a custom for the purposes of a motion to dismiss. *Id.*

Plaintiff's *Monell* claims against the City must be dismissed because his allegations are the very epitome of boilerplate. He does not identify any specific policies or practices, nor does he explain how any policy caused him to suffer the denial of a constitutional right. At its most specific, the complaint alleges:

> Defendants developed, implemented, enforced, encouraged, and sanctioned *de facto* policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiff's constitutional rights which caused the violation of such rights; Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the 1st, 4th, 5th, 6th, 13th, and 14th Amendments . . .

(Compl. ¶ 19J). Under even the most generous of readings, such conclusory allegations are clearly insufficient to sustain a *Monell* claim. *See Scalpi v. Town of E. Fishkill*, No. 14 Civ. 2126 (KMK), 2016 WL 858955, at *8 (S.D.N.Y. Feb. 29, 2016) (dismissing *Monell* claim where "Plaintiff broadly, and without specific factual allegations, contends that the County 'failed to train [its] agents properly.'"); *Santos v. N.Y. City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the] claims against the

City are dismissed with prejudice." (citation omitted)); *Harris v. Nassau Cty.*, No. 13 Civ. 4728, 2016 WL 3023265, at *11 (E.D.N.Y. May 24, 2016) ("Plaintiff's claims are supported by nothing more than conclusory, boilerplate statements. Plaintiff has not specifically identified an official policy or explained how that policy caused him to suffer the denial of a constitutional right.").

### 6.      Other Claims

Plaintiff brings three last claims pursuant to 42 U.S.C. § 1983: a Fourth Amendment search claim; a First Amendment claim; and a claim of judicial misconduct. These also must also be dismissed. Plaintiff fails to plead any factual allegations whatsoever in support of these claims, despite the Court's notice to Plaintiff of the pleading deficiencies at the initial pretrial conference and Plaintiff's opportunity to file an amended complaint.[4] To the extent Plaintiff has provided *any* context for these claims, it has only come in the form of statements in his memoranda of law and at the conference.[5] But as the Court warned Plaintiff at the conference, facts must be alleged in the complaint itself.[6] It is insufficient to allege facts in a legal memoranda or at a hearing. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 526 (S.D.N.Y. 2015) (collecting cases).

---

[4] At the conference, the Court stated, "I didn't see any factual allegations in the complaint relating to any alleged judicial misconduct." (Tr. 2.) Later, the Court stated, "I raised questions about the relief related to alleged violations of the First Amendment. I didn't see any allegations in the complaint relating to that. . . . whatever those claims are, the factual underpinnings for that claim need to be further elucidated in the complaint because I don't see them in the complaint that's currently before me." (Tr. 2-3.)

[5] A court reporter was present for the second half of the conference, during which time the Court re-stated for the record Plaintiff's counsel's earlier representations. As to the judicial misconduct claim, the Court recounted, "I didn't see any factual allegations in the complaint relating to any alleged judicial misconduct. Plaintiff's counsel had mentioned something about the judge in the Bronx refusing to sign a warrant for the arrest of one of the defendants as a factual basis for that claim." (Tr. 3.) As to the First Amendment claim, the Court recounted, "I raised questions about the relief related to the alleged violations of the First Amendment. I didn't see any allegations in the complaint relating to that. Plaintiff's counsel had mentioned something about the fact that his client protested his innocence to the officers and the officers did not believe him, or something to that effect." (Tr. 3.)

[6] The Court told Plaintiff, "[S]imply filing a brief that explains why this claim should survive, and then putting those facts in the brief, is going to create issues. I need the facts. The facts need to be in the complaint . . . You have mentioned some of these things in court, but they need to be in the complaint." (10-11.)

From Plaintiff's representations at the conference and in his memoranda of law, it seems

that he intends to bring these claims not on his own behalf but on behalf of others. For instance,

the Court asked how Plaintiff could bring Sixth Amendment claims regarding trial rights when

the charges against him were dropped before trial. Plaintiff's counsel replied, "The reason we

brought up other similarly situated individuals is because some people are not as lucky as my

client, in the sense that he was released within a few hours or days and that he was exonerated at

the subsequent criminal case when I was his counsel." (Tr. 5.) Counsel continued, "So when we

talk with generalities, your honor, we are talking about other people similarly situated . . . the

reason we bring up the other people similarly situated and the reason we kept our claims

relatively broad are because, while some of the elements may touch specifically on the facts of

our case, some of them may be ancillary, and we'd be more than happy to brief that . . ." (Tr. 6.)

While counsel's statements explain the lack of factual allegations in support of his

claims, they do not excuse it. Plaintiff has complied with none of the requirements for bringing a

class action. To start, he does not describe a proposed class, nor does he allege the existence of

the four prerequisites to a Rule 23 class action: numerosity, commonality, typicality, and

adequacy. Fed. R. Civ. P. 23(a). Furthermore, even if Plaintiff were to bring a class action, he

would still have to establish that he has Article III standing to pursue the claims. To satisfy

Article III standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the

challenged conduct of the defendant caused and (3) which a favorable decision will likely

redress." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "In the ordinary course, a

litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on

the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). "In the

class action context, Article III standing requires that 'for every named defendant there must be

at least one named plaintiff who can assert a claim directly against that defendant.'" *Catalano v. BMW of N. Am., LLC*, --- F. Supp. 3d ---, No. 15 Civ. 4889 (KBF), 2016 WL 844832, at *8 (S.D.N.Y. Mar. 1, 2016) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007). This means that to determine whether Article III standing exists, the Court looks to the named plaintiff, rather than the proposed class. *Id.* (citing *Mahon*, 683 F.3d at 64). Where, as here, there is but one named plaintiff, that plaintiff must have standing to bring each claim asserted. *See id.*

It is clear that Plaintiff does not have standing to bring what he refers to as "generalized" claims, as he may not assert claims where he himself has not suffered an injury. Thus, Plaintiff's remaining 42 U.S.C. § 1983 claims must be dismissed. *See Catalano*, 2016 WL 844832, at *8 ("Because the only named plaintiff does not have a direct claim against [Defendant], [Defendant] must be dismissed on Article III standing grounds.").

**B.      New York State Constitution**

Plaintiff next alleges two claims under the New York State Constitution: (1) violation of the state constitution's equal protection clause; and (2) violation of the state constitution's protections against unreasonable searches and seizures. However, "[i]t is a common view among District Courts in this Circuit . . . that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." *Gounden v. City of New York*, No. 14 Civ. 7411, 2015 WL 5793625, at *5 n. 3 (E.D.N.Y. Oct. 2, 2015) (citing *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439 (S.D.N.Y.1999)); *see also Sherman v. Town of Chester*, No. 12 Civ. 647 (ER), 2015 WL 1473430, at *14 (S.D.N.Y. Mar. 31, 2015) ("[T]here is no private right of action for violations of the New York State Constitution where, as here, alternative remedies exist pursuant to, for example, 42 U.S.C. § 1983 . . ." (citation omitted)); *Hollins v. City of New*

*York*, No. 10 Civ. 1650 (LGS), 2014 WL 836950, at \*14 (S.D.N.Y. Mar. 3, 2014) ("Courts in the Second Circuit generally agree that New York State Constitution creates no individual liability where § 1983 provides a remedy." (citation omitted)); *Davis v. City of New York*, 959 F. Supp. 2d 324, 368 (S.D.N.Y. 2013) ("New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff." (citation omitted)).

Because 42 U.S.C. § 1983 provides a remedy for both equal protection claims and unreasonable search claims, there is no private right of action for these claims under the state constitution. *See Flores*, 41 F. Supp. 2d at 447 (finding no private right of action for search claim under state constitution); *Gounden*, 2015 WL 5793625, at \*5 n. 3 (finding no private right of action for equal protection claim under state constitution, or in the alternative, declining to exercise supplemental jurisdiction over such a claim). Accordingly, Plaintiff's state constitution claims are dismissed.

### C.    State Common-Law Claims

Finally, Plaintiff alleges four common law claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; and (4) negligent supervision, retention, and training.

#### 1.    Intentional and Negligent Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, "a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121

(N.Y. 1993)). The conduct in question must be "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Id*. (quoting *Freihofer v. Hearst Corp*., 65 N.Y.2d 135, 143 (N.Y. 1985)). The tort "remains a highly disfavored tort under New York law," "to be invoked only as a last resort." *Id*. (alterations and citations omitted). As such, "a claim for [intentional infliction of emotional distress] may not be sustainable where the conduct complained of falls well within the ambit of other traditional tort liability." *Id*. at 159 (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (N.Y. 1978)).

Plaintiff's claim cannot overcome these high barriers, for several reasons. First, Plaintiff "does not indicate against which defendants he intends to make this claim, or for what particular actions." *Kennedy v. City of New York*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *17 (S.D.N.Y. Oct. 23, 2015). Second, any conduct alleged to have been suffered personally by Plaintiff—most notably, his arrest—is not sufficiently outrageous to satisfy the first element of intentional infliction of emotional distress. *See Sorrell v. Cty. of Nassau*, No. 10 CV 49 (DRH) (GRB), 2016 WL 740434, at *10 (E.D.N.Y. Feb. 24, 2016) (dismissing Plaintiff's claim where Plaintiff argued that as a result of his false arrest by defendant, he was incarcerated at a tough prison for four months and had his parole date pushed back). Finally, "the conduct of which Plaintiff complains falls within the scope of claims of unreasonable search and seizure, false arrest, and malicious prosecution." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 581 (S.D.N.Y. 2015). For all of these reasons, the intentional infliction of emotional distress claim is dismissed.

For similar reasons, Plaintiff's claim of negligent infliction of emotional distress must be dismissed. "Under New York law, a claim of negligent infliction of emotional distress requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct

and the injury, and (3) severe emotional distress." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (quoting *Garrison v. Toshiba Bus. Solutions (USA), Inc.*, 907 F.Supp.2d 301, 307 (E.D.N.Y. 2012)). "Under New York law, a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the bystander theory; or (2) the direct duty theory." *Id.* (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). "Both theories require physical injury or the threat of danger, either to the plaintiff herself or to a close family member." *Id.* (alteration, citation, and internal quotation marks omitted). Plaintiff again fails to make the requisite showing of extreme and outrageous conduct. Furthermore, he fails to allege any physical injury or threat of physical injury. Accordingly, his negligent infliction of emotional distress claim is dismissed.

### 2. Negligence and Negligent Supervision

Plaintiff alleges a claim of negligence and a claim of negligent supervision, retention, and training. "To state a claim for negligence under New York law, a plaintiff must allege (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff." *Podlach v. Vill. of Southampton*, No. 14 Civ. 6954, 2016 WL 877763, at *12 (E.D.N.Y. Jan. 7, 2016) (quoting *Field Day, LLC v. Cty. of Suffolk*, No. 04 Civ. 2202, 2005 WL 2445794, at *23 (E.D.N.Y. Sept. 30, 2005)). "Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence." *Bah v. City of New York*, No. 13 Civ. 6690 (PKC), 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) (citing *United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993)). "Though litigants may allege alternate, or inconsistent, claims in a pleading, when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." *Id.* (internal citation omitted). In addition, New York law "bars all negligence claims arising out of allegedly

improper procedures during an arrest." *Harley v. The City of New York*, No. 14 Civ. 5452, 2016 WL 552477, at *6 n. 11 (E.D.N.Y. Feb. 10, 2016) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

As with most of Plaintiff's claims, it is unclear what factual allegations underlie his negligence claim, and so the Court cannot say that he plausibly alleges any of the required elements. In addition, to the extent that this claim is based on Defendants' alleged intentional acts such as Defendants' arrest of Plaintiff, the claim is not cognizable. Accordingly, it must be dismissed.

Even where an individual defendant cannot be held liable, however, "a number of courts in this Circuit have recognized a municipal liability claim based on negligent training and supervision." *Harley*, 2016 WL 552477, at *6 n. 11 (collecting cases). "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).

But because Plaintiff does not allege any facts in support of his negligent training claim, this claim too must be dismissed. Plaintiff does not identify a tortfeasor or an injury in relation to this claim and so it is impossible to ascertain whether the tortfeasor and the City were in an employee-employer relationship, let alone that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence.

In light of these deficiencies, Plaintiff has failed to state a plausible claim of negligent supervision, retention, and training.

## CONCLUSION

For the foregoing reasons, all of Plaintiff's claims are dismissed. The Clerk of Court is respectfully directed to terminate ECF No. 28.

**SO ORDERED.**

**Dated**:   August 29, 2016
             New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**